## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IRAIDA GONZALEZ and LINDA CAUDILL, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FORTRA, LLC,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Iraida Gonzalez and Linda Caudill ("Plaintiffs") bring this Class Action Complaint on behalf of themselves and all others similarly situated, against Defendant, FORTRA, LLC ("Defendant"), alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to them, which are based on personal knowledge:

## NATURE OF THE CASE

1.    Plaintiffs seek to obtain damages, restitution, and injunctive relief for a class of individuals (the "Class" or "Class Members") who are similarly situated and have received notices of a data breach either from a customer of Defendant Fortra, or directly from Defendant Fortra, a cybersecurity and automation information technology software company. These third-party customers include Community Health Systems Professional Services Corporations, LLC ("CHSPSC"), Hatch Bank ("Hatch Bank"), and other

companies or organizations who are Fortra's customers ("Customers"), which have been attacked by cybercriminals as a result of Fortra's negligence.

2.      Entities that handle sensitive, personally identifying information ("PII") and protected health information ("PHI") owe a duty to the individuals to whom that data relates. This duty arises based upon the parties' relationship and because it is foreseeable that the exposure of PII or PHI to unauthorized persons—and especially hackers with nefarious intentions—will result in harm to the affected individuals, including, but not limited to, the invasion of their private health matters.

3.      The harm resulting from a data breach manifests in several ways, including identity theft and financial fraud, and the exposure of a person's PII or PHI through a data breach ensures that such person will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of their lives. Mitigating that risk, to the extent it is even possible to do so, requires individuals to devote significant time and money to closely monitor their credit, financial accounts, health records, and email accounts, and take several additional prophylactic measures.

4.      This class action arises out of a massive January 2023 data breach ("Data Breach") of documents and information stored on the computer network of Defendant Fortra, including but not limited to Fortra's "GoAnywhere" site.[1]

---

[1] *See* Notice of Third-Party Security Incident Impacting CHSPSC Affiliate Data ("CHSPSC Website Notice") *available at* https://www.chs.net/notice-of-third-party-security-incident-impacting-chspsc-affiliate-data/ (last visited April 6, 2023)

5.      On its computer network, Fortra holds and stores certain highly sensitive PII and PHI on behalf of Customers.

6.      Customers collect the PII and PHI of Plaintiffs and Class Members, i.e., individuals who provided their highly sensitive and confidential personal information in exchange for business services offered by the Customers. The Customers then entrust Fortra to organize, store, and protect that PII and PHI on their behalf.

7.      According to the Notice of Data Breach Letters that CHSPSC, and Hatch Bank sent to Plaintiffs and Class Members related to their business, Fortra first "became aware of the incident the evening of January 30, 2023 and took impacted systems offline on January 31, 2023, stopping the unauthorized party's ability to access the system."[2]

8.      Fortra's investigation determined that there was a breach to its computer network from January 30, 2023, to January 31, 2023. On or about February 2, 2023, Fortra notified CHSPSC and Hatch Bank (and upon information and belief, other Customers) of the incident.

9.      It informed CHSPSC and Hatch Bank that the files it stored for CHSPSC and Hatch Bank on Fortra's GoAnywhere site were subject to unauthorized access and compromised.

10.     In its February 13, 2023 Securities and Exchange Commission K-8 filing CHSPSC stated that it was notified "that Fortra had experienced a security incident that resulted in the unauthorized disclosure of [CHS] data" through its secure file transfer

---

[2] *See* Notice Letter sent to Plaintiff Gonzalez, attached hereto at Exhibit "A" and Notice Letter sent to Plaintiff Caudill, attached hereto at Exhibit "B."

software, GoAnywhere. As a result of this breach, both PHI and "PII" of approximately one million CHSPSC patients were exposed.

11.    Hatch Bank began notifying the approximately 139,493 consumers affected by the Data Breach on or about February 28, 2023 and CHSPSC began notifying the approximately 962,884 consumers associated with its healthcare business on or about March 24, 2023.

12.    Customers' (including CHSPSC, Hatch Bank, and others) reliance on Fortra's technology led to unauthorized access and compromise of more than a million individuals' names and Social Security numbers as well as PII and PHI, depending on the Customer's specific business type. The victims of Fortra's data breach include Plaintiffs and Class Members.

13.    As a result of Defendant's Data Breach subjecting Customers' data to unauthorized access and exfiltration, Plaintiffs and millions of Class Members suffered ascertainable losses in the form of invasion of privacy and financial losses resulting from identity theft, out-of-pocket expenses, the loss of the benefit of their bargain, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

14.    Plaintiffs' and Class Members' highly sensitive personal information—which was entrusted to Defendant by its Customers—was compromised and unlawfully accessed and extracted during the Data Breach.

15.    Based upon the Notice Letters sent by Hatch Bank and CHSPSC, CHSPSC's Website Notice, and the SEC filing referenced above, the PII and PHI compromised in the

Data Breach was intentionally accessed and removed, also called exfiltrated, by the cyber-criminals who perpetrated this attack and remains in the hands of those cyber-criminals.

16.    The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect Plaintiffs and Class Members' PII and PHI, despite selling its software and data protection services to Customers for that very purpose.

17.    Plaintiffs bring this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' PII and PHI that was collected by Customers and maintained by Defendant, and for failing to provide timely and adequate notice of its "software vulnerabilities" to Customers so they might mitigate and prevent the Data Breach, and so that information could be transmitted to Plaintiffs and other Class Members to prevent or reduce the injuries resulting from their PII and PHI being stolen by cybercriminals.

18.    Defendant maintained its software and the stored PII and PHI in a reckless manner. In particular, the PII and PHI was maintained on Defendant's computer network in a condition vulnerable to cyberattacks. The mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' and Class Members' PII and PHI was a well-known risk to Defendant. Thus, Defendant was on notice that failing to take steps necessary to secure the PII and PHI from those risks left that property in a dangerous condition.

19.    Defendant disregarded the privacy and property rights of Plaintiffs and Class Members by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against

unauthorized intrusions; failing to disclose that they did not have adequately robust computer systems and security practices to safeguard Plaintiffs' and Class Members' PII and PHI; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to provide Plaintiffs and Class Members prompt and accurate and complete notice of the Data Breach.

20.    In addition, Defendant and its employees failed to properly monitor the computer network and systems that housed the PII and PHI. Had Defendant properly monitored its computers, it would have discovered the software vulnerability and risk of criminal intrusion sooner and been able to mitigate the injuries to Plaintiffs and the Class.

21.    Plaintiffs' and Class Members' identities are now at substantial and imminent risk because of Defendant's negligent conduct since the PII and PHI that Defendant collected and maintained (including Social Security numbers as well as personal health information) is now in the hands of data thieves.

22.    As a result of the Data Breach, Plaintiffs and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiffs and Class Members must now and in the future closely monitor their financial and medical accounts to guard against identity theft.

23.    Plaintiffs and Class Members may also incur, or have already incurred, out of pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

24.    Through this Class Action Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and a Class (defined below) of all similarly situated individuals whose PII and PHI was accessed during the Data Breach.

25.    Accordingly, Plaintiffs bring this action against Defendant for negligence, unjust enrichment, and declaratory relief, seeking redress for Defendant's unlawful conduct.

26.    Plaintiffs seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate, long term credit monitoring services funded by Defendant, and declaratory relief.

## PARTIES

27.    Plaintiff Iraida Gonzalez is an adult individual who at all relevant times has been a citizen and resident of the Commonwealth of Pennsylvania.  Plaintiff Gonzalez's PHI and PII were maintained within Defendant's networks. Shortly after March 24, 2023, Plaintiff Gonzalez received a notice letter from CHSPSC informing Plaintiff that her PII and PHI may have been accessed or exposed to unknown, unauthorized third parties during the Data Breach. *See* Exhibit "A."

28.    Plaintiff Linda Caudill is an adult individual who at all relevant times has been a citizen and resident of the State of Texas.  Plaintiff Caudill's PII  was maintained within Defendant's networks. Shortly after February 28, 2023, Plaintiff Caudill received a notice letter from Hatch Bank informing Plaintiff that her PII may have been accessed or exposed to unknown, unauthorized third parties during the Data Breach. *See* Exhibit "B."

29.    Defendant Fortra, LLC, is a limited liability company organized and registered according to the laws of the State of Delaware. Defendant Fortra maintains its primary headquarters in Eden Prairie, Minnesota. Fortra's principal place of business is located at 11095 Viking Drive, Suite 100, Eden Prairie, Minnesota, 55344.

30.    Plaintiffs reserve the right to seek leave to add other necessary defendants responsible for Plaintiffs' and Class Members' damages and injuries, including but not limited to any parent company, principals, members, or affiliate of Fortra and/or its Customers, including but not limited to Hatch Bank and/or CHSPSC.

## JURISDICTION AND VENUE

31.    The Court has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendant. See 28 U.S.C. § 1332(d)(2)(A). The Court has personal jurisdiction over Defendant because it owns and operates businesses that are headquartered in Minnesota and conduct substantial business throughout Minnesota.

32.    Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the acts giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL BACKGROUND

**A.    Defendant Knew the Risks of Storing Valuable PII and PHI and the Foreseeable Harm to Victims**

33.    At all relevant times, Defendant knew it was storing and permitting its employees to use its internal network server to transmit valuable, sensitive PII and PHI and that, as a result, Defendant's systems would be attractive targets for cybercriminals.

34.    Defendant also knew that any breach of its systems, and exposure of the information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose PII and PHI was compromised, as well as intrusion into their highly private health information.

35.    These risks are not merely theoretical; in recent years, numerous high-profile breaches have occurred at businesses such as Equifax, Yahoo, Marriott, Anthem, and many others.

36.    PII has considerable value and constitutes an enticing and well-known target to hackers.  Hackers easily can sell stolen data as a result of the "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[3]  PHI, in addition to being of a highly personal and private nature, can be used for medical fraud and to submit false medical claims for reimbursement.

37.    The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals,

---

[3] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/.

businesses, and government entities in the U.S.  According to the IRTC, in 2019, there were 1,473 reported data breaches in the United States, exposing 164 million sensitive records and 705 million "non-sensitive" records.[4]

38.    In tandem with the increase in data breaches, the rate of identity theft and the resulting losses has also increased over the past few years. For instance, in 2018, 14.4 million people were victims of some form of identity fraud, and 3.3 million people suffered unrecouped losses from identity theft, nearly three times as many as in 2016. And these out-of-pocket losses more than doubled from 2016 to $1.7 billion in 2018.[5]

39.    The healthcare industry has become a prime target for threat actors: "High demand for patient information and often-outdated systems are among the nine reasons healthcare is now the biggest target for online attacks."[6]

40.    "Hospitals store an incredible amount of patient data. Confidential data that's worth a lot of money to hackers who can sell it on easily – making the industry a growing target."[7]

41.    The breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Defendant's patients especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

---

[4] *Data Breach Reports: 2019 End of Year Report*, IDENTITY THEFT RESOURCE CENTER, at 2, *available at* https://notified.idtheftcenter.org/s/resource#annualReportSection.
[5] Insurance Information Institute, *Facts + Statistics: Identity theft and cybercrime*, available at  https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20(1).
[6] https://swivelsecure.com/solutions/healthcare/healthcare-is-the-biggest-target-for-cyberattacks/.
[7] *Id.*

42.     As indicated by Jim Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where PHI records can go from $20 say up to—we've even seen $60 or $70."[8]  A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market, whereas stolen payment card information sells for about $1.[9]

43.     According to Experian:

> Having your records stolen in a healthcare data breach can be a prescription for financial disaster. If scam artists break into healthcare networks and grab your medical information, they can impersonate you to get medical services, use your data open credit accounts, break into your bank accounts, obtain drugs illegally, and even blackmail you with sensitive personal details.

> ID theft victims often have to spend money to fix problems related to having their data stolen, which averages $600 according to the FTC. But security research firm Ponemon Institute found that healthcare identity theft victims spend nearly $13,500 dealing with their hassles, which can include the cost of paying off fraudulent medical bills.

> Victims of healthcare data breaches may also find themselves being denied care, coverage or reimbursement by their medical insurers, having their policies canceled or having to pay to reinstate their insurance, along with suffering damage to their credit ratings and scores. In the worst cases, they've been

---

[8] IDExperts, You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows: https://www.idexpertscorp.com/knowledge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat.
[9] PriceWaterhouseCoopers, *Managing cyber risks in an interconnected world*, Key findings from The Global State of Information Security® Survey 2015: https://www.pwc.com /gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

threatened with losing custody of their children, been charged with drug trafficking, found it hard to get hired for a job, or even been fired by their employers.[10]

44.    The "high value of medical records on the dark web has surpassed that of social security and credit card numbers. These records can **sell for up to $1,000 online.**"[11]

45.    According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[12]

46.    Even if stolen PII or PHI does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII about the individual, such as name, address, email address, and affiliations, to

---

[10] Experian, Healthcare Data Breach: What to Know About them and What to Do After One: https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

[11] https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon.

[12] United States Government Accountability Office, Report to Congressional Requesters, Personal Information, June 2007: https://www.gao.gov/assets/gao-07-737.pdf.

gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

**B.      Defendant Breached its Duty to Protect its PII and PHI**

47.     According to the Notice of Data Breach Letter that CHSPSC sent to Plaintiff Gonzalez and Class Members who were patients at affiliates of CHSPSC, Fortra first became aware of a security incident on or about January 30, 2023 after discovering "a previously unknown vulnerability" in its software and began investigating.

48.     Fortra's investigation determined that there was a breach to its computer network from January 28, 2023, to January 30, 2023.

49.     On or about February 2, 2023, Fortra notified CHSPSC and Hatch Bank of the incident an informed CHSPSC and Hatch Bank that the files it stored on Fortra's GoAnywhere site were subject to unauthorized access. CHSPSC's and Hatch Bank's files were compromised in this incident.

50.     Hatch Bank began notifying impacted individuals in February 2023. CHSPSC began notifying Data Breach victims in March 2023, approximately two months after the data breach occurred, stating that their PHI and PII had been stolen in what Defendants called a "security incident."

51.     CHSPSC's and Hatch Bank's reliance on Fortra's technology led to unauthorized access to their customers' names, demographic information, HIPAA-protected medical information, and Social Security numbers, including those of Plaintiffs and Class Members.

52.     Upon information and belief, in early February 2023, Fortra also began notifying its other Customers of the Data Breach as well. It is uncertain if other Customers of Fortra have sent notice letters to their clients or customers as of the filing date of this Complaint, or if those Customers will be notifying their affected Class Members at a later date.

53.     Similarly, other Fortra Customers' reliance on Fortra's technology led to unauthorized access to consumers' and patients' names and Social Security numbers, other PII and PHI, including those of other Class Members.

## C.     Plaintiffs and Class Members Suffered Damages

54.     For the reasons mentioned above, Defendant's conduct, which allowed the Data Breach to occur, caused Plaintiffs and Class Members significant injuries and harm in several ways. Plaintiffs and Class Members must immediately devote time, energy, and money to: 1) closely monitor their medical statements, bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than they already do; 3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

55.     Once PII or PHI is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiffs and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Defendant's conduct. Further, the value

of Plaintiffs' and Class Members' PII and PHI has been diminished by its exposure in the Data Breach.

56.      As a result of Defendant's failures, Plaintiffs and Class Members are at substantial increased risk of suffering identity theft and fraud or misuse of their PII and PHI.

57.      From a recent study, 28% of consumers affected by a data breach become victims of identity fraud – this is a significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3%.[13]

58.      With respect to health care breaches, another study found "the majority [70%] of data impacted by healthcare breaches could be leveraged by hackers to commit fraud or identity theft."[14]

59.      "Actors buying and selling PII and PHI from healthcare institutions and providers in underground marketplaces is very common and will almost certainly remain so due to this data's utility in a wide variety of malicious activity ranging from identity theft and financial fraud to crafting of bespoke phishing lures."[15]

60.      The reality is that cybercriminals seek nefarious outcomes from a data breach" and "stolen health data can be used to carry out a variety of crimes."[16]

---

[13] https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud.
[14] https://healthitsecurity.com/news/70-of-data-involved-in-healthcare-breaches-increases-risk-of-fraud.
[15] *Id.*
[16] https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon.

61.    Health information in particular is likely to be used in detrimental ways – by leveraging sensitive personal health details and diagnoses to extort or coerce someone, and serious and long-term identity theft.[17]

62.    "Medical identity theft is a great concern not only because of its rapid growth rate, but because it is the most expensive and time consuming to resolve of all types of identity theft. Additionally, medical identity theft is very difficult to detect which makes this form of fraud extremely dangerous."[18]

63.    Plaintiffs and the Class members have also been injured by Defendant's unauthorized disclosure of their confidential and private medical records and PHI.

64.    Plaintiffs and Class Members are also at a continued risk because their information remains in Defendant's systems, which have already been shown to be susceptible to compromise and attack and are subject to further attack so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect its patients' PII and PHI.

## **CLASS ALLEGATIONS**

65.    Plaintiffs bring this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following classes:

**Nationwide Class**

All individuals in the United States whose PII and/or PHI was compromised in the Defendant's data breach which occurred in January of 2023.

---

[17] *Id.*
[18] https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf.

**Pennsylvania Class**

All individuals in Pennsylvania whose PII and/or PHI was compromised in the Defendant's data breach which occurred in January of 2023.

**Texas Class**

All individuals in Texas whose PII and/or PHI was compromised in the Defendant's data breach which occurred in January of 2023.

66.     Excluded from the Class is Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

67.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes prior to moving for class certification.

68.     **Numerosity.**  The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective Class Members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendant's records, including but not limited to, the files implicated in the Data Breach.  Based on public information, the Class includes over one million individuals.

69.     **Commonality.**  This action involves questions of law and fact that are common to the Class Members. Such common questions include, but are not limited to:

a.    Whether Defendant had a duty to protect the PII and PHI of Plaintiffs and Class Members;

b.    Whether Defendant had a duty to maintain the confidentiality of Plaintiffs' and Class Members' PHI;

c.    Whether Defendant breached its obligation to maintain Plaintiffs' and the Class members' medical information in confidence;

d.    Whether Defendant was negligent in collecting and storing Plaintiffs' and Class Members' PII and PHI, and breached its duties thereby;

e.    Whether Defendant breached its fiduciary duty to Plaintiffs and the Class.

f.    Whether Defendant failed to properly give notice under applicable federal and state laws;

g.    Whether Defendant's conduct constitutes a violation of applicable federal and state laws;

h.    Whether Plaintiffs and Class Members are entitled to damages as a result of Defendant's wrongful conduct;

i.    Whether Plaintiffs and Class Members are entitled to restitution or disgorgement as a result of Defendant's wrongful conduct; and

j.    Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

70.    **Typicality**.  Plaintiffs' claims are typical of the claims of the Class Members. The claims of the Plaintiffs and members of the Class are based on the same legal theories and arise from the same failure by Defendant to safeguard PII and PHI.  Plaintiffs and Class Members all had their PII and PHI obtained by an unauthorized third party in the Data Breach.

71.    **Adequacy of Representation.**  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class Members Plaintiffs seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; Plaintiffs intend to prosecute this action vigorously; and Plaintiffs' counsel has adequate financial means to vigorously pursue this action and ensure the interests of the Class will not be harmed.  Furthermore, the interests of the Class Members will be fairly and adequately protected and represented by Plaintiffs and Plaintiffs' counsel.

72.    **Predominance.**  Common questions of law and fact predominate over any questions affecting only individual Class Members. For example, Defendant's liability and the fact of damages is common to Plaintiffs and each member of the Class. If Defendant breached its common law and statutory duties to secure PII and PHI on its network server, then Plaintiffs and each Class Member suffered damages from the exposure of their sensitive personal information in the Data Breach.

73.    **Superiority.** Given the relatively low amount recoverable by each Class Member, the expenses of individual litigation are insufficient to support or justify individual suits, making this action superior to individual actions.

74.    **Manageability.** While the precise size of the Class is unknown without the disclosure of Defendants' records, public records indicate at least one million individuals whose PII and/or PHI was compromised in the Data Breach.  The claims of Plaintiffs and the Class Members are substantially identical as explained above. Certifying the case as a class action will centralize these substantially identical claims in a single proceeding and adjudicating these substantially identical claims at one time is the most manageable litigation method available to Plaintiffs and the Class.

**FIRST CAUSE OF ACTION**
**NEGLIGENCE**
**(On Behalf of Plaintiffs and the Classes)**

75.    Plaintiffs restate and reallege all proceeding allegations above as if fully set forth herein.

76.    Defendant owed a duty under common law to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII and PHI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

77.    Defendant's duty to use reasonable care arose from several sources, including but not limited to those described below.

78.    Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of Defendant. By collecting and storing valuable PII and PHI that is routinely targeted by criminals for unauthorized access,

Defendant was obligated to act with reasonable care to protect against these foreseeable threats.

79.     Defendant's duty also arose from Defendant's position as a provider of healthcare. Defendant holds itself out as a trusted provider of healthcare, and thereby assumes a duty to reasonably protect its patients' information.  Indeed, Defendant, as a direct healthcare provider, was in a unique and superior position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

80.     Defendant breached the duties owed to Plaintiffs and Class Members and thus was negligent. Defendant breached these duties by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII and PHI; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; and (g) failing to follow its own privacy policies and practices published to its patients.

81.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, their PII and PHI would not have been compromised.

82.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as Defendant or failing to use reasonable measures to protect PII and PHI. Various FTC publications and orders also form the basis of Defendant's duty.

83.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and PHI and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored and the foreseeable consequences of a data breach involving PII and PHI of its patients.

84.    Plaintiffs and members of the Class are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

85.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

86.    The harm that has occurred as a result of Defendant's conduct is the type of harm that the FTC Act was intended to guard against.

87.    Defendant violated its own policies by actively disclosing Plaintiffs' and the Class Members' PHI and PII; by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PHI and PII; failing to maintain the confidentiality of Plaintiffs' and the Class Members' records; and by failing to provide timely notice of the breach to Plaintiffs and the Class.

88.    As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have suffered injuries, including:

a.      Theft of their PII and/or PHI;

b.      Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

c.      Costs associated with purchasing credit monitoring and identity theft protection services;

d.      Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.      Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Defendant Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.      The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII and/or PHI being placed in the hands of criminals;

g.      Damages to and diminution in value of their PII and PHI entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiffs' and Class Members' data against theft and not allow access and misuse of their data by others;

h.     Continued risk of exposure to hackers and thieves of their PII and/or PHI, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' data;

i.     Loss of their privacy and confidentiality in their PHI; and,

j.     Loss of personal time spent carefully reviewing statements from health insurers and providers to check for charges for services not received.

89.     As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### UNJUST ENRICHMENT
**(On Behalf of Plaintiffs and the Classes)**

90.     Plaintiffs restate and reallege all proceeding allegations above as if fully set forth herein.

91.     Plaintiffs and Class Members conferred a monetary benefit on Defendant through its Customers in the form of the provision of their PII and PHI and Defendant would be unable to engage in its regular course of business without that PII and PHI.

92.     Defendant appreciated that a monetary benefit was being conferred upon it by its Customers on behalf of Plaintiffs and Class Members and accepted that monetary benefit.

93.     However, acceptance of the benefit under the facts and circumstances outlined above make it inequitable for Defendant to retain that benefit without payment of the value thereof. Specifically, Defendant enriched itself by saving the costs it reasonably

should have expended on data security measures to secure Plaintiffs' and Class Members' PII and PHI. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite data security.

94.     Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary benefit belonging to Plaintiffs and Class Members, because Defendant failed to implement appropriate data management and security measures.

95.     Defendant acquired the PII and PHI through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

96.     If Plaintiffs and Class Members knew that Defendant had not secured their PII and PHI, they would not have agreed to provide their PII and PHI to Defendant through its Customers.

97.     Plaintiffs and Class Members have no adequate remedy at law.

98.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered or will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII

and PHI in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

99.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

100.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from them.

**THIRD CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiffs and the Classes)**

101.    Plaintiffs restate and reallege all proceeding allegations above as if fully set forth herein.

102.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to declare rights, status, and other legal relations, and such declarations shall have the force and effect of a final judgment or decree.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

103.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiffs' and Class Members' PII and PHI and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class Members from further data breaches that compromise their PII and PHI. Plaintiff alleges that Defendant's data security measures remain inadequate, contrary to Defendant's assertion that it has

confirmed the security of its network. Furthermore, Plaintiffs and Class Members continue to suffer injury as a result of the compromise of their PII and PHI and remain at imminent risk that further compromises of their PII and/or PHI will occur in the future.

104.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

        a.      Defendant owes a legal duty to secure PII and PHI and to timely notify any individuals impacted by a data breach under the common law, Section 5 of the FTC Act, HIPAA, various state statutes, and the common law; and

        b.      Defendant continues to breach this legal duty by failing to employ reasonable measures to secure PII and PHI.

105.    This Court also should issue corresponding prospective injunctive relief requiring Defendant to, at minimum 1) disclose, expeditiously, the full nature of the Data Breach and the types of PII and PHI accessed, obtained, or exposed by the hackers; 2) implement improved data security practices to reasonably guard against future breaches of Plaintiffs and Class members' PII and PHI possessed by Defendant; and 3) provide, at its own expense, all impacted victims with lifetime identity theft protection services.

106.    If an injunction is not issued, Plaintiffs and the Classes will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiffs will not have an adequate remedy at law because many of the

resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

107.    The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiffs will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

108.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiffs and others whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated, pray for relief as follows:

a.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

b.    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

c.    For compensatory, statutory, treble, and/or punitive damages in amounts to be determined by the trier of fact;

d.    For an order of restitution, disgorgement, and all other forms of equitable monetary relief;

e.    Declaratory and injunctive relief as described herein;

f.    Awarding Plaintiffs' reasonable attorneys' fees, costs, and expenses;

g.    Awarding pre- and post-judgment interest on any amounts awarded; and

h.    Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

A jury trial is demanded on all claims so triable.

Respectfully submitted,

Dated: April 7, 2023

*/s/ Brian C. Gudmundson*
Brian C. Gudmundson, MN Bar No. 336695
Michael J. Laird, MN Bar No. 398436
Rachel K. Tack, MN Bar No. 399529
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.com
rachel.tack@zimmreed.com

Kenneth J. Grunfeld*
Kevin W. Fay*
**GOLOMB SPIRT GRUNFELD P.C.**
1835 Market Street, Suite 2900
Philadelphia, Pennsylvania 19103
Telephone: (215) 346-7338
Facsimile: (215) 985-4169
kgrunfeld@golomblegal.com
kfay@golomblegal.com

*Attorneys for Plaintiffs and the Class*

*\*Pro Hac Vice* applications to be filed